UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

SHERRY BUSHANSKY,

                        Plaintiff,

         - against -

COMMISSIONER OF SOCIAL SECURITY

                    Defendant.
────────────────────────────────────

13 Civ. 2574 (JGK)

MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Sherry Bushansky, seeks to reverse a final decision of the defendant, the Commissioner of Social Security (the "Commissioner"), finding the plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). The plaintiff filed an application for DIB on January 7, 2011, and alleges a disability onset date of November 23, 2010. Her date last insured was on December 31, 2010. The plaintiff's application was denied initially on April 2, 2011. At the plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on January 9, 2012 and on January 24, 2012, the ALJ denied the plaintiff's claim. The ALJ's decision became the Commissioner's final decision when the Appeals Council declined review on March 7, 2013.

The parties filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## I.

The administrative record contains the following facts.

The plaintiff, born July 27, 1972, has a high school education and training as a medical assistant. (Tr. 92, 110.) Over the past fifteen years, the plaintiff worked sporadically, including as a receptionist, cashier, administrative assistant, and medical assistant. (Tr. 30-32, 110.)  She worked most recently as a medical assistant, from March 2008 to June 2008. (Tr. 110.)

On October 12, 2010, the plaintiff went to Good Samaritan Hospital Medical Center, requesting doctors resupply her Adderall, which she said was used to treat Chronic Fatigue Syndrome, Epstein Barr Syndrome, Fibromyalgia, and Lyme Disease. (Tr. 151.)  The plaintiff also stated she suffered from black outs and from pain in her chest, right-ribs, and right leg. (Tr. 151.)  X-rays on the plaintiff's right ribs and right leg did not reveal any abnormalities. (Tr. 157-58.)  Medical personnel found the plaintiff's condition stable, provided her with a prescription for Amphetamine Salt combination, and released her with orders to follow-up with doctors at a community health center. (Tr. 159-160.)

On November 23, 2010 the plaintiff sought treatment at South Oaks Hospital for depression symptoms. (Tr. 161.)  Dr. Kirin Kumar diagnosed the plaintiff with a non-specific mood

disorder and possible Major Depressive Disorder, and prescribed Cymbalta and Adderall.  (Tr. 113, 164, 194.)

On December 2, 2010 the plaintiff began treatment at Straight Path Medical with Drs. Pierre Collins and Octavian Austriacu.  (Tr. 112, 251-52.)  The plaintiff returned to Straight Path Medical on January 4, 2011.  (Tr. 172, 253.) Treatment notes from that visit indicate that the plaintiff was diagnosed with, among other things, ADHD and bipolar disorder. (Tr. 172, 253.)

The plaintiff applied for DIB on January 7, 2011, alleging a disability beginning on October 4, 2008.[1]  (Tr. 50, 92.)  On January 31, 2011, the plaintiff sought treatment at the Pederson-Krag Center, where she was evaluated by Marissa Sherov, a licensed master of social work.  (Tr. 204-13.)  Sherov's report noted the plaintiff reported two prior instances of suicidal ideation and had been diagnosed with Bipolar Disorder by "multiple treatment providers."  (Tr. 204, 206.)  Sherov also noted that the plaintiff had been treated on one occasion by Dr. Kumar at South Oaks Mental Hospital and on four occasions by a private psychologist.  (Tr. 210.)

---

[1] During her hearing before the ALJ, the plaintiff amended her onset date to November 23, 2010.  (Tr. 16.)  Thus the period at issue for determining disability is from the amended onset date, November 23, 2010, to plaintiff's last insured date, December 31, 2010.  (Tr. 14, 16.)

In her report, Sherov indicated the plaintiff's prominent symptoms included: depressed mood, anxiety, irritability / aggressiveness, decreased energy, change in appetite, and insomnia (Tr. 212), and Sherov diagnosed the plaintiff with Bipolar Disorder, borderline personality disorder, hypothyroidism, Lyme disease, and anemia (Tr. 213).

On February 14, 2011, the plaintiff returned to Dr. Austriacu, and reported having suffered chest pains and black outs. (Tr. 253.) Dr. Austriacu diagnosed the plaintiff with, among other things, ADD, depression, Bipolar Disorder, and insomnia. (Tr. 253.) The plaintiff returned to Dr. Austriacu again on March 16, 2011 and reported having suffered from depression and fatigue. (Tr. 254.) Dr. Austriacu prescribed Adderall.[2] (Tr. 254.)

On September 15, 2011, psychologist Dr. Nicholas Massa completed a medical source statement regarding the plaintiff's mental impairments and their effect on the plaintiff's ability to perform unskilled, semi-skilled, and skilled work. (Tr. 243–48.) In the report, Dr. Massa indicated that he first treated the plaintiff on June 24, 2011 and had seen the plaintiff once each week for about ten weeks. (Tr. 243.) Dr. Massa also

---

[2] Dr. Austriacu's treatment notes also indicate he examined the plaintiff on February 21, 2011 and April 22, 2011 for ailments unrelated to the pending motions. (Tr. 254-55.) On March 25, 2011, Dr. Vito Rizzo treated the plaintiff for another condition that is unrelated to the pending motions. (Tr. 216-17, 238.)

indicated, in the space on the form for identifying symptoms, that the plaintiff suffered from, among other things, poor memory, sleep disturbances, personality changes, mood disturbances, intellectual ability losses, dependence on medications, paranoia or inappropriate suspiciousness, difficulty thinking and concentrating, suicidal ideation, social withdrawal or isolation, decreased energy, manic syndrome, intrusive recollections of a traumatic experience, and hostility and irritability.  (Tr. 243.)

Dr. Massa determined that the plaintiff's impairments were consistent with her symptoms and functional limitations, and had lasted or could be expected to last more than twelve months. (Tr. 244-45.)  Dr. Massa also determined that the plaintiff's mental impairments resulted in moderate limitations on the plaintiffs activities of daily living and ability to maintain social functioning, and resulted in frequent deficiencies of concentration, persistence, and pace that left her unable to complete tasks in a timely manner.  (Tr. 245.)  He also found continual episodes of deterioration or decompensation in work or work-like settings, which caused her to either withdraw from that situation or exacerbated her symptoms.  (Tr. 245.)

In the space on the medical source statement for evaluating the plaintiff's mental abilities and aptitude to do unskilled work, Dr. Massa indicated the plaintiff had poor ability to

maintain regular attendance and be punctual, to work in coordination with others without being unduly distracted, to complete a normal workday and workweek without interruptions from psychological symptoms, to respond appropriately to changes in a routine week, and to deal with normal work stress.  (Tr. 246.)  With respect to almost all remaining criteria, Dr. Massa indicated that the plaintiff's ability or aptitude was seriously limited but not precluded.[3]  (Tr. 246.)  The plaintiff's Bipolar Disorder interfered with the work-related abilities described above.  (Tr. 247.)  Dr. Massa concluded that while the plaintiff's prognosis was fair, it would be difficult for her to work at a regular job on a sustained basis, and she would miss work more than three times each month due to her impairments. (Tr. 245.)

In a letter dated October 5, 2011, Dr. Massa explained that the plaintiff continued to experience "difficulties of health, physical and emotional, exacerbated by very difficult living conditions and severe economic problems."  (Tr. 249.)  He noted that the plaintiff was diagnosed with depression.  (Tr. 249.)

In a letter dated November 3, 2011, Dr. Austriacu noted that the plaintiff continued to experience physical and mental

---

[3] On the medical source statement form, this conclusion corresponds to a "fair" rating.  However, Dr. Massa indicated that the plaintiff's ability to understand, remember, and carry out short and simple instructions was "good," that is, limited but satisfactory.  (Tr. 246.)

difficulties exacerbated by difficult living conditions and extreme economic problems and identified the plaintiff's primary diagnosis as depression.  (Tr. 251.)  Dr. Austriacu noted the plaintiff's "physical problems stem from a late diagnosis of Lyme disease which at times exacerbates her emotional issues." (Tr. 251.)

On November 25, 2011, the plaintiff qualified for Medicaid due to her disabilities.  (Tr. 260-61.)  After the plaintiff's application for DIB was initially denied, she filed a request for a hearing, which was held on January 9, 2012 before the ALJ. (Tr. 26.)  The plaintiff appeared with her attorney and testified that she was living with her mother and, at times, with her nine year-old son.  (Tr. 34-35.)  The plaintiff stated that she relied on her mother for housing and groceries, and that the plaintiff provided some assistance with household chores.  (Tr. 34-35, 46.)  The plaintiff also stated that she was not able to sustain work due to depression and irritability. (Tr. 33, 45-46.)

At the hearing, the plaintiff testified that she had been seeing Drs. Austriacu and Collins for approximately eighteen months, had been seeing Dr. Massa for about four months, and had also seen Dr. Kumar.  (Tr. 36-39.)  The plaintiff stated that she suffers from, amongst other things, depression, post-Lyme Disease, hyperthyroidism, and the side-effects from medications

7

her physicians prescribed, and that she experiences insomnia, fatigue, and manic episodes.  (Tr. 33, 37, 41.)

On January 24, 2012, the ALJ issued his decision denying benefits.  (Tr. 21.)  The ALJ found that the plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date to her last insured date.  (Tr. 16.)  The ALJ further found that the plaintiff had two "severe impairments: Bipolar Disorder and Limes disease" that limited her ability to do basic work activities.  (Tr. 16.)  However, the ALJ determined that these impairments were not the same as or equivalent to any listed impairment entitling the plaintiff to DIB under 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (Tr. 16.)

With respect to the plaintiff's residual functional capacity ("RFC")[4], the ALJ concluded that the plaintiff had the capacity to perform simple unskilled "light work."  (Tr. 18.) The ALJ "accord[ed] limited weight" to Dr. Massa's opinions because his treatment and therapy notes were not in the record, his opinion was "conclusory," and he "fail[ed] to provide an explanation of the evidence relied upon in forming the opinion." (Tr. 19.)  The ALJ found the plaintiff's statements "concerning

---

[4] RFC is an assessment of an individual's ability, despite her impairment, to meet the physical, mental, sensory and other demands of a job based on all relevant evidence.  20 C.F.R. § 416.945; see also Villanueva v. Barnhart, No. 03 Civ. 9021(JGK), 2005 WL 22846, at *6 n.7 (S.D.N.Y. Jan. 5, 2005).

the intensity, persistence, and limiting effects of [her]
symptoms [were] not credible to the extent they [were]
inconsistent" with the ALJ's RFC determination because the
plaintiff's "sporadic work history" raised questions about
whether her unemployment was the result of medical impairments
and there "[was] simply insufficient evidence of disabling
impairments that would preclude all vocational activity." (Tr.
19.)

The ALJ next found that the plaintiff could not perform her
relevant past work because the plaintiff's past work required
greater exertional and mental capacity than the plaintiff
possessed. (Tr. 20.) Accordingly, the ALJ considered whether,
based on the plaintiff's RFC, age, education, and work
experience, there were jobs existing in significant numbers in
the national economy that the plaintiff could perform. The ALJ,
relying on medical vocational guidelines rule 202.21 (the
"Grids"), found that the plaintiff could perform work existing
in significant numbers in the national economy. (Tr. 20.) The
ALJ concluded that the plaintiff's additional limitations had
little or no effect on the occupational base of unskilled light
work. (Tr. 20.)

The ALJ thus found that the plaintiff was not disabled
under the Act and denied the plaintiff's DIB claim. (Tr. 20-
21.) The plaintiff appealed to the Appeals Council on February

27, 2012.  (Tr. 7.)  When the Appeals Council denied review on
March 7, 2013, the ALJ's determination became final and the
appeal to this Court ensued.  (Tr. 1.)


## II.

The plaintiff argues that the ALJ erred by (1) failing to
request treatment and therapy notes from treating psychologist
Dr. Massa and failing to ask Dr. Massa to clarify his opinions
before according them limited weight and (2) determining that
the plaintiff's testimony about the "intensity, persistence and
limiting effects" of her symptoms was not credible.


## A.

A court may set aside the Commissioner's decisions only if
they are based on legal error or not supported by substantial
evidence in the record.  See 42 U.S.C. § 405(g) (2012); Butts v.
Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) as amended on reh'g
in part, 416 F.3d 101 (2d Cir. 2005).  "Substantial evidence is
more than a mere scintilla.  It means such relevant evidence as
a reasonable mind might accept as adequate to support a
conclusion."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)
(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971))
(internal quotation marks and alterations omitted).  A
"disability" occurs when the claimant has an "inability to

10

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A reviewing court may enter a "judgment affirming, modifying, or reversing the decision . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is particularly appropriate where an ALJ has failed to develop the record sufficiently and where a remand for further findings would help to assure the proper disposition of a claim.  See Butts, 388 F.3d at 386.

**B.**

There is a five-step framework to evaluate disability claims set out in 20 C.F.R. § 404.1520(a).  In essence, "if the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must find [her] disabled if (5) there is not another type of work the claimant can do." Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (citations omitted); see also, e.g., Selian, 708 F.3d at 417–18.

11

The claimant must first establish a disability under the Act (the framework's first four steps).  See Burgess, 537 F.3d at 120.  If satisfied, the Commissioner must establish that, given the claimant's RFC, there is still work the claimant could perform in the national economy (the framework's fifth step).  See id.  If a claimant cannot perform work in the national economy then the claimant is entitled to DIB.  See id.

                                    C.

        Unlike judges in a district court trial, in the non-adversarial DIB hearing, ALJs have an affirmative duty to develop the record fully.  See Butts, 388 F.3d at 386; Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (Sotomayor, J.).  ALJs must "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence . . . necessary in order to properly make a [disability] determination . . ."  42 U.S.C. § 423(d)(5)(B); see also Rosa, 168 F.3d at 74-75, 81 (remanding to develop record when ALJ did not request further evidence from a treating physician seen at least nine times over about fifteen months); Torres v. Commissioner of Social Secur., 13 Civ. 730, 2014 WL 406933, at *4-*6 (S.D.N.Y. Feb. 3, 2014) (remanding to develop record when ALJ requested treatment notes from some, but not all, of plaintiff's treating sources and did not follow up).  When a disability claim is based on a psychiatric illness the

                                    12

ALJ's duty to develop the record is "enhanced."  Camilo v.
Comm'r of the Soc. Sec. Admin., 11 Civ. 1345, 2013 WL 5692435,
at *22 (S.D.N.Y. Oct. 2, 2013) ("[I]t is the ALJ's duty to
develop the record and resolve any known ambiguities, and that
duty is enhanced when the disability in question is a
psychiatric impairment.").

    If an ALJ fails to develop the record fully, a reviewing
court must remand the case so that the record may be fully
developed.  See, e.g., Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.
1996).


                              **II.**

    The ALJ erred when according treating psychologist Dr.
Massa's medical opinions limited weight without requesting
treatment and therapy notes from Dr. Massa or asking him to
clarify his medical opinions.

    Dr. Massa treated the plaintiff once per week for about ten
weeks starting June 24, 2011.  (Tr. 243.)  There are two items
in the record by Dr. Massa: a medical source statement worksheet
and a handwritten letter.  (Tr. 243-50.)  He retrospectively
diagnosed the plaintiff with depression and described how her
physical and mental limitations would affect her work-related
capacities.  He concluded that the plaintiff only possessed some
of the mental abilities and aptitude required for unskilled work

and that she was incapable of semi-skilled and skilled work.
(Tr. 243-48.)  Dr. Massa emphasized the plaintiff's Bipolar
disorder noting it creates "undue personal and social
difficulties" and interferes with her work abilities.  (Tr. 246-
47.)  No treatment or therapy notes were in the record to
support the report.

In the decision, the ALJ found the lack of treatment or
therapy notes in the record significant and accorded Dr. Massa's
medical opinions "limited weight" but did not request treatment
and therapy notes from Dr. Massa or ask him to clarify his
medical opinions.  (Tr. 19.)  In doing so, the ALJ emphasized
that Dr. Massa provided an "opinion that is conclusory and fails
to provide an explanation of the evidence relied upon in forming
the opinion."  (Tr. 19.)  It was plain legal error for the ALJ
to discount the opinion of the plaintiff's treating psychologist
because there was no treatment or therapy notes when the ALJ did
not ask for such records.  It was similarly error to discount
Dr. Massa's opinion as "conclusory," despite the detailed
explanation by Dr. Massa, without asking for further support.

A medical opinion by a treating source, even if
retrospective, is generally entitled to significant weight.  See
Lucas v. Barnhart, 160 F. App'x 69, 71 (2d Cir. 2005) (summary
order) (citations omitted); Dousewicz v. Harris, 646 F.2d 771,
774 (2d Cir. 1981) (noting even where a treating source's

14

opinions were retrospective because he "did not treat the [claimant] during the relevant period" the opinions were "still entitled to significant weight"). A "retrospective diagnosis must be evaluated in terms of whether it is predicated upon a medically acceptable clinical diagnostic technique and whether, considered in light of the entire record, it establishes the existence of a[n] impairment." Lucas, 160 F. App'x at 71 (citations omitted); accord Wagner v. Secretary of Health & Human Servs., 906 F.2d 856, 857, 859, 861-62 (2d Cir. 1990); cf. Monette v. Astrue, 269 F. App'x 109, 113 (2d Cir. 2008) (summary order) (affirming an ALJ's decision failing to give a retrospective medical opinion significant weight when—unlike this case—substantial evidence in record contradicted the opinion).

For example, in Lucas, the plaintiff's psychologist retrospectively diagnosed the plaintiff with anxiety and depression. See 160 F. App'x at 70-71. The ALJ failed to develop the record that would help explain the opinion. See id. at 71. Remanding the ALJ's decision, the Court of Appeals explained that "[a] retrospective diagnosis, made as many as several years after an onset, must nonetheless be granted 'significant weight' by the ALJ," noting, "[t]o the extent that these facts were not adequately developed in the administrative record—in particular, [the claimant]'s precise history of

prescriptions for anxiety and depression—the ALJ was obligated
to fill these gaps."  Id.

Here, like Lucas, the ALJ should have granted Dr. Massa's
opinion "significant weight" and determined whether Dr. Massa's
opinions were predicated upon medically acceptable clinical
diagnostic techniques or established the existence of an
impairment.  See, e.g., Dousewicz, 646 F.2d at 774.  To the
extent that facts necessary for this determination were not
provided, the ALJ had a duty to contact Dr. Massa to develop the
record further.  The ALJ could not rely on the absence of
treatment and therapy notes when he failed to obtain them.
Accordingly, giving Dr. Massa's opinion limited weight due to
insufficient evidence without first attempting to fill the gaps
in the record was error.

Citing Section (d) of 20 C.F.R. pt. 404.1512, the
Commissioner contends the ALJ was not required to contact
Dr. Massa because Dr. Massa did not begin treating the plaintiff
until about five and a half months after she had filed her DIB
application.  See 20 C.F.R. pt. 404.1512(d) ("Before we make a
determination that you are not disabled, we will develop your
complete medical history for at least the 12 months preceding

the month in which you file your application . . . .").  This

contention is misplaced.[5]

Where an ALJ finds a medical opinion "insufficiently

explained, lacking in support, or inconsistent with the

physician's other reports, the ALJ must seek clarification and

---

[5] Section (e)(1) of that same regulation in effect until March
26, 2012 provided:  "We will first recontact your treating
physician or psychologist or other medical source to determine
whether the additional information we need is readily available.
We will seek additional evidence or clarification from your
medical source when the report from your medical source contains
a conflict or ambiguity that must be resolved, the report does
not contain all the necessary information, or does not appear to
be based on medically acceptable clinical and laboratory
diagnostic techniques."  See Calzada v. Asture, 753 F. Supp. 2d
250, 269-70 (S.D.N.Y. 2010) (quoting 20 C.F.R. pt.
404.1512(e)(1) (2012) (amended version available at 20 C.F.R.
pt. 404.1512(e) (2014))).  This Section does not indicate it
only applies to medical opinions created before a claimant files
a disability application.  After the Commissioner's final
decision was issued, on March 26, 2012, a final rule came into
effect removing this provision and adding 20 C.F.R. § 404.1520b.
See 77 Fed. Reg. 10651-57 (Feb. 23, 2012).  There is no evidence
that this amendment was meant to apply retroactively.  Further,
in the proposed rulemaking the Social Security Administration
explained that under the amended regulation it still intended
for ALJs to recontact a claimant's medical sources whose
opinions do not include enough clinical or objective findings.
See 76 Fed. Reg. 20282, 20283 (Apr. 12, 2011) ("Although we
propose to eliminate the requirement that we recontact your
medical source(s) first when we need to resolve an inconsistency
or insufficiency in the evidence he or she provided, we expect
that out adjudicators would continue to recontact your medical
source(s) when we believe such recontact is the most effective
and efficient way to resolve an inconsistency or inefficiency.
For example, if we have a report from one of your medical
sources that contains a functional assessment of your physical
capacity for work, but no clinical or objective findings in
support, we expect that the adjudicator would first contact that
source to find out the reasons for his or her assessment.").

additional information from the physician to fill any clear gaps
before dismissing the doctor's opinion." Calzada, 753 F. Supp.
2d at 269; see also Cedeno v. Comm'r of Soc. Sec., 315 F. App'x
352, 353 (2d Cir. 2009) (summary order) ("[T]he ALJ disregarded
the opinion of Dr. Luis Guerra because it was conclusory and not
supported by clinical and laboratory diagnostic tests without
first seeking additional evidence as required by the relevant
regulations. . . . Accordingly, further administrative
proceedings are necessary to evaluate Cedeno's application for
DI and SSI benefits."); Rosa, 168 F.3d at 79 ("[E]ven if the
clinical findings were inadequate, it was the ALJ's duty to seek
additional information from [the treating physician] *sua
sponte*.") (citations omitted) (alterations in original).

    This duty can still apply to records from a medical source
who treated the claimant after the DIB application was filed.
This is true because a medical source's opinion about treatment
after the DIB application was filed may support the conclusion
that the claimant was in fact suffering from a disability at the
time the DIB application was filed.  See Rolon v. Comm'r of Soc.
Sec., 994 F. Supp. 2d 496, 504-05 (S.D.N.Y. 2014) (remanding for
ALJ to develop the record fully when ALJ accorded little weight
to a treating psychologist's opinion who began treatment after
the claimant submitted his application due to an inconsistency
in the report); Miller v. Astrue, 03CIV.2072 (LAP) (FM), 2008 WL

2540750, *2, *7, *9-*10 (S.D.N.Y. June 23, 2008) (remanding for
the ALJ to develop the record fully when ALJ accorded little
weight to opinion of a treating doctor who began treatment after
the claimant submitted her application when it was unclear what
the doctor's opinion was based on).  The ALJ was required to
request additional evidence or clarification from Dr. Massa even
though Dr. Massa began treating the plaintiff after she filed
her DIB application.


                               **III.**

     The ALJ also erred when he conclusory determined that the
plaintiff's testimony about the "intensity, persistence and
limiting effects" of her symptoms was not credible.  The ALJ
failed to provide sufficient reasons for review.

     While "the ALJ has discretion to evaluate the credibility
of the claimant and to arrive at an independent judgment, in
light of the medical findings and other evidence, regarding the
true extent of the pain alleged, if the ALJ decides to reject
subjective testimony concerning pain and other symptoms, he must
do so explicitly and with sufficient specificity to enable the
Court to decide whether there are legitimate reasons for the
ALJ's disbelief and whether his determination is supported by
substantial evidence."  Brandon v. Bowen, 666 F. Supp. 604, 608
(S.D.N.Y. 1987); see also Lugo v. Apfel, 20 F. Supp. 2d 662, 663

                                19

(S.D.N.Y. 1998).  "It is not sufficient for the adjudicator to make a single, conclusory statement that . . . the allegations are (or are not) credible."  Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01(5) (July 2, 1996).

In this case, the ALJ determined the plaintiff's testimony regarding the "intensity, persistence and limiting effects" of her symptoms was not credible in a "single, conclusory statement," which reads as follows:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that are inconsistent with the above [RFC] assessment.

(Tr. 19.)  The decision does not state a basis for this credibility determination, leaving this Court unable to review the decision.  "Conclusory determinations such as these leave a reviewing court no basis on which to determine whether the proper factors were considered and the appropriate legal standards applied."  Lugo, 20 F. Supp. 2d at 664; see also Harrison v. Sec'y of Health & Human Servs., 901 F. Supp. 749, 757 (S.D.N.Y. 1995); Fishburn v. Sullivan, 802 F. Supp. 1018, 1028-29 (S.D.N.Y. 1992); Brandon, 666 F. Supp. at 608-09.

The Commissioner's motion improperly justifies the ALJ's decision by highlighting facts and reasons the decision does not cite.  Because reviewing courts cannot consider post hoc rationalization for an ALJ's decision, see Snell v. Apfel, 177

F.3d 128, 134 (2d Cir. 1999), it is incumbent on an ALJ to explain the reasoning within the decision.  Failing to do so in this case was a legal error that requires a remand so that the ALJ can state the basis for the credibility determination with sufficient specificity that a court may review the decision.

**CONCLUSION**

This Court considered all of the arguments of the parties.[6] To the extent not addressed above, the remaining arguments are either moot or without merit.  For all the reasons explained above, the plaintiff's cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is **granted**, and the Commissioner's motion is **denied**. The Commissioner's decision is **reversed** and this case is **remanded** for further administrative proceedings developing the record in accordance with this opinion.  The Clerk is directed to **enter judgment and to close this case.**

**SO ORDERED.**

Dated:   New York, New York
         September 23, 2014          _____/s/_____
                                        **John G. Koeltl**
                                   **United States District Judge**

---

[6] It is unnecessary to reach the plaintiff's additional contentions that the ALJ erred by (1) failing to request an opinion about the plaintiff's work-related capabilities from his treating physician Dr. Austriacu and (2) relying on the Grids in a determinative manner to conclude that the plaintiff was disabled without consulting a vocational expert.